Argued and submitted December 2, 1983; resubmitted In Banc June 5, reversed and remanded October 10, reconsideration denied December 14, 1984, petition for review denied February 20, 1985 (298 Or 704)

## ALLSTATE INSURANCE CO.,
*Respondent,*

*v.*

## HANDEGARD,
*Defendant,*
## GREGORY et al,
*Appellants.*

## (82-484-J-3; CA A27762)

688 P2d 1387

Steven P. Pickens, Medford, argued the cause and filed the briefs for appellants.

Robert L. Cowling, Medford, argued the cause for respondent. With him on the brief was Cowling & Heysell, Medford.

WARREN, J.

Newman, J., dissenting.

## WARREN, J.

Defendants Gregory, husband and wife, appeal from a summary judgment for plaintiff insurer in a declaratory judgment action to determine the rights of defendants under a policy of automobile insurance. We reverse and remand.

Plaintiff's policy insured defendant Handegard, whose vehicle collided with a vehicle in which the Gregorys were riding. Both Gregorys were injured in the occurrence. They sued Handegard. In the first claim, Mrs. Gregory asked for $750,000 general damages for her injuries and substantial special damages for medical expenses. In the first count of the second claim, Mr. Gregory asked for $150,000 for loss of his wife's consortium. In his second claim, he asked for $125,000 general damages for his injuries and $400 special damages for medical expenses.

Plaintiff then brought this action. Plaintiff and the Gregorys moved for summary judgment, each asserting that there is no genuine issue of material fact. The court denied the Gregorys' motion but granted plaintiff's motion. The summary judgment, consistent with plaintiff's prayer, recites:

"The policy of insurance issued by plaintiff insuring * * * Theodore M. Handegard provides limits of liability of $50,000 *in toto* for the claims of defendants Shirley J. Gregory and Dale T. Gregory with respect to the loss of consortium claim as stated in the first count of the second cause of action and such policy does not provide separate levels of coverage of $50,000 for the claims of Shirley J. Gregory and the loss of consortium claim of defendant Dale T. Gregory as stated in the first count of the second cause of action * * *."

The policy's "declarations page" states:

"BODILY INJURY LIABILITY

"$50,000 EACH PERSON - $100,000 EACH OCCUR-RENCE"

With respect to bodily injury coverage, the policy provides:

"Allstate will pay for all damages a person insured is legally obligated to pay — because of bodily injury * * * meaning:

"(1) *Bodily injury,* sickness, disease or death to any person, *including loss of services;* * * * (Emphasis supplied.)

Part I also provides:

"Limits of Liability.

"The limits shown on the declarations page are the maximum *we* will pay for any single *auto* accident. The limit stated for each person for bodily injury applies to all damages arising from bodily injury, sickness, disease, or death sustained by one person in any one occurrence. The occurrence limit is *our* total limit of liability for all legal damages for bodily injury sustained by two or more persons in any *one* occurrence. For property damages, the limit applies to all legal damages arising from each occurrence." (Emphasis in original.)

Plaintiff asserts that the $50,000 limit of liability for "each person" covers both the claim of Mrs. Gregory for her bodily injuries and of Mr. Gregory for loss of her consortium. It argues that, although Mr. Gregory's claim for loss of consortium is for a "loss of services,"[1] that loss does not come under the $100,000 "occurrence" limit, because "loss of services" is not, under the policy, a "bodily injury." Plaintiff asserts that Mr. Gregory lost his wife's consortium and suffered damages only because *she* sustained "bodily injury."

The Gregorys argue that "loss of services" is a "bodily injury" under the policy and that Mr. Gregory suffered a "bodily injury" when he lost his wife's consortium. Accordingly, they argue that, when Mrs. Gregory was physically injured and unable to provide services to Mr. Gregory, both suffered a "bodily injury." The occurrence limit, therefore applies because two persons suffered bodily injury in one occurrence.

The only issue presented is whether any amounts husband may recover for loss of wife's services must be recovered from the $50,000 limit of liability applicable to wife's claim for her own injuries. Relying on the terms of this policy, we conclude that any amount Mr. Gregory may be entitled to recover for the loss of his wife's services is recoverable from the separate "occurrence" limit not applicable to wife's injury.

The terms of this policy define loss of services as a type of bodily injury. The policy says:

---

[1] *See Napier v. Banks,* 9 Ohio App 2d 265, 224 NE 2d 158 (1967); *United Services Automobile Ass'n v. Warner,* 64 Cal App 3d 957, 135 Cal Rptr 34, 37 (1976).

"Allstate will pay for all damages a person insured is legally obligated to pay — because of *bodily injury* or property damage *meaning:*

"(1) *Bodily injury,* sickness, disease or death to any person, *including loss of services;* * * *." (Emphasis supplied.)

When a policy of insurance defines terms in a manner which differs from the ordinary understanding of those terms, the policy definition controls. *Gowans v. N.W. Pac. Indem. Co.,* 260 Or 618, 489 P2d 947, 491 P2d 1178 (1971); *Ausman v. Eagle Fire Ins.,* 250 Or 523, 444 P2d 18 (1968). This policy does just that when it defines loss of services as a form of bodily injury.

According to the policy, "bodily injury" means "bodily injury" to any person, including loss of services. Apart from the high probability of confusion arising from any attempt to define a term by restating the term sought to be defined, this policy does not expressly answer the question from whose liability limits a loss of services claim must be recovered.[2]

If "bodily injury * * * to any person" means physical injury and its consequences, *e.g.,* mental suffering, clearly a loss of services claim does not belong to the same person who sustained the physical injury.

In our view, the relevant inquiry is which of these two people sustained the loss of services injury. All agree that loss of services means the loss of Mrs. Gregory's services to Mr. Gregory. Mrs. Gregory does not suffer a loss of her own services. She recovers within her liability limits for her personal injuries. The loss of Mrs. Gregory's services is an independent, separate injury suffered only by Mr. Gregory and any right to recover damages is vested solely in him. *See Naber v. Thompson,* 274 Or 309, 312, 546 P2d 467 (1976); *Norwest v. Presbyterian Intercommunity Hosp.,* 52 Or App 853, 860, 631 P2d 1377 (1981), *aff'd* 293 Or 543, 652 P2d 318

---

[2] To say that "bodily injury" means "bodily injury" adds nothing to the understanding of the reader. If "bodily injury" means physical injury, the answer to the question we examine here becomes no clearer. If we read the policy to say that a single limit applies to physical injury to any person, including loss of services, we still do not know whether the claim for loss of services should be paid from the insurance applicable to the person who sustained the physical injury or from the limits applicable to the person who sustained the loss of services.

(1982). Because the loss of services was, by policy definition, a "bodily injury" sustained by Mr. Gregory, we conclude that the loss must come within the liability limit applicable to him.

The dissent finds support for its position in the policy paragraph entitled "Limits of Liability." This paragraph purports to say that all injuries "arising from bodily injury * * * sustained by one person" should be within that person's liability limit. Although we agree that Mr. Gregory's loss of his wife's services is a consequence arising from Mrs. Gregory's injury, there is only confusion when applying the policy's definition of bodily injury to the language in this section. Before the single limit will apply, the policy terms require that the "bodily injury" must be sustained by *one* person. Although the loss of services arises from Mrs. Gregory's physical injury, under the express terms of this policy, the loss of Mrs. Gregory's services is a separate "bodily injury" sustained by Mr. Gregory. Therefore, the single limit cannot apply, because the bodily injury was not sustained by *one* person. We indulge in this analysis only to show that, if the section of the policy entitled "Limits of Liability" can be read as the dissent reads it, it can also be read in the way we suggest.[3] This policy, at best, is confusing and we interpret it in favor of extending coverage to the insured. *See Western Fire Insurance Co. v. Wallis,* 289 Or 303, 308, 613 P2d 36 (1980).

We hold that when, as here, "loss of services" is defined as a bodily injury, wife suffers physical injury and husband claims loss of wife's services, *two* people have suffered "bodily injury" in one occurrence and recovery is not limited to the $50,000 limit for *one* person.

---

[3] If "bodily injury," as used in the policy, includes loss of services, the Limits of Liability section must be read as follows:

"The limits shown on the declarations page are the maximum *we* will pay for any single *auto* accident. The limit stated for each person for bodily injury applies to all damages arising from bodily injury, sickness, disease, or death *[including loss of services] sustained by one person* [emphasis supplied] in any one occurrence. The occurrence limit is *our* total limit of liability for all legal damages for bodily injury sustained by two or more persons in any *one* occurrence. * * *" (Emphasis in original.)

When a policy expressly defines a term such as "bodily injury," the meaning attributed to it by the policy should be applied to that term wherever it appears.

It is conceded, as it must be, that Mrs. Gregory's physical injuries and Mr. Gregory's loss of her services were not sustained by the same person.

Reversed and remanded.

**NEWMAN, J.,** dissenting.

I dissent. The majority argues that when an insurance policy defines a term in a manner that differs from ordinary understanding, the policy definition controls. The policy, however, does not contradict the common understanding that loss of services is not a bodily injury. Contrary to the majority's assertion, the policy does *not* define loss of services as a "bodily injury."

The entire coverage section reads:

"Allstate will pay for all damages a person insured is legally obligated to pay — because of bodily injury or property damage meaning:

"(1) Bodily injury, sickness, disease or death to any person, including loss of services: and

"(2) Damage to or destruction of property, including loss of use."

The policy does not state that bodily injury means "bodily injury, sickness, disease or death, including loss of services." A comma and the words "to any person" separate "loss of services" from the definition of bodily injury. The significance of the placement of the words "to any person" is clear when the entire coverage section is examined. It covers bodily injury *and* property damage. The words "including loss of services" in subsection 1 and "including loss of use" in subsection 2 qualify the word "damages" in the lead clause. Neither phrase follows directly after the word "damages" because the section covers both bodily injury and property damage. An accurate reading of the coverage section is:

1. Allstate will pay for all damages, including loss of services, a person insured is legally obligated to pay because of bodily injury, meaning bodily injury, sickness, disease or death to any person; and

2. Allstate will pay for all damages, including loss of use, a person is legally obligated to pay because of damage to or destruction of property.

This reading is consistent with the policy section on Limits of Liability. The words "including loss of services" are *not* used in that section. It only mentions "bodily injury, sickness, disease or death." If loss of services was a "bodily

injury" those words should be repeated. They are not. The majority seeks to account for this omission by reading the Limits of Liability section to include the missing words. (*See* 70 Or App at 267, n. 3.) But they are not there.

The Gregorys argued below and in their opening brief that the policy is *not* ambiguous. I agree. *See Western Fire Ins. Co. v. Wallis,* 289 Or 303, 308, 613 P2d 36 (1980). The majority asserts that the "policy, at best, is confusing and we interpret it in favor of extending coverage to the insured." 70 Or App at 267. The "confusion" results from the majority's misreading of the policy and provides no basis for the result the majority reaches.

Under the coverage section, the policy protects the insured for damages to the limits of liability that he is legally obligated to pay *"because* of bodily injury." (Emphasis supplied.) Mr. Gregory lost his wife's services "because of" *her* bodily injury, not his. *See United Services Automobile Association v. Warner,* 64 Cal App 3rd 957, 135 Cal Rptr 34, 37 (1976). Mr. Gregory's claim for loss of his wife's consortium, therefore, is covered and limited by the $50,000 liability limit for each person and not by the $100,000 liability limit for each occurrence. There was no issue of fact. Plaintiff is entitled to summary judgment. ORCP 47.

Richardson and Warden, JJ., join in this dissent.