NATIONWIDE MUTUAL INSURANCE COMPANY, APPELLANT/CROSS-RESPONDENT, v. FIDEL MOYA AND SEBERO A. MOYA, A MINOR, BY FIDEL MOYA, HIS GUARDIAN AD LITEM, AND GILBERT DANIEL DeLaROSA, A MINOR, BY CORDY AND GILBERT VELARDE, GUARDIANS AD LITEM, AND FIDEL MOYA, AS THE ADMINISTRATOR OF THE ESTATE OF RUBY MOYA, DECEASED, RESPONDENTS/CROSS-APPELLANTS.

No. 22013

August 10, 1992 837 P.2d 426

*Thorndal, Backus, Maupin & Armstrong,* and *Charles L. Burcham* and *Stephen C. Balkenbush,* Reno, for Appellant/Cross-Respondent.

*McDonald, Carano, Wilson, McCune, Bergin, Frankovich, & Hicks,* and *Leroy Arrascada,* Reno, for Respondents/Cross-Appellants.

## OPINION

*Per Curiam:*
An insured died from injuries she suffered in a car accident

caused by an uninsured motorist. Respondents/cross-appellants ("the Moyas"), the insured's personal representative and survivors, sought the "each occurrence" limit under the insurer's uninsured motorists provision. They also attempted to stack the death and dismemberment benefit. The district court granted each party partial summary judgment, ruling that the Moyas were entitled to the "each occurrence" limit and that the death and dismemberment benefit was not subject to stacking. For the reasons stated herein, we conclude that the district court erred as to its determination of the applicable limit but properly ruled as to the stacking issue.

## FACTS

Ruby Moya was driving alone on State Route 429 (the Bowers Mansion Highway). Suddenly, her car was struck by a vehicle driven by a drunken driver, John Dittmer ("Dittmer"). Mrs. Moya suffered severe injuries in the accident and, as a result, died several days later.

Appellant/cross-respondent Nationwide Mutual Insurance Company ("Nationwide") had issued an automobile casualty and liability insurance policy to Mrs. Moya and her husband, Fidel Moya. This policy insured the Moyas' pickup truck and 1987 Ford Tempo, which was involved in the accident.

It is undisputed that Dittmer was an uninsured motorist.[1] The Moyas' insurance policy provides for uninsured motorist ("UM") coverage. The policy lists the following limits of liability for damages caused by an uninsured motorist: $25,000 for "each person" and $50,000 for "each occurrence." The policy provides:

**UNINSURED MOTORISTS**
The Coverage section is replaced to read:
**COVERAGE**
**We** will pay **bodily injury** (meaning **bodily injury,** sickness, disease, or death) damages that are due **you** by law from the owner or driver of an **uninsured motor vehicle.** Damages must result from an accident arising out of the:
1. ownership;
2. maintenance; or
3. use;
of the **uninsured motor vehicle. We** will also pay these damages to **relatives.**

---

[1] The Moyas inform the court that Dittmer carried only minimal liability coverage of $15,000 per person and $30,000 per accident. The Moyas, however, suffered damages above Dittmer's coverage. Thus, under the language of the policy, Dittmer was classified as an uninsured motorist.

. . . .
## LIMITS OF PAYMENT
The Limits of Payment section is replaced to read:
**AMOUNT PAYABLE FOR UNINSURED MOTORISTS LOSSES The company's** obligation to pay uninsured motorists losses is limited to the amounts per person and per occurrence stated in the policy Declarations. The following conditions apply to these limits:
1. **Bodily injury** limits shown for any one person are for all legal damages, including care or loss of services, claimed to anyone for **bodily injury** to one person as a result of one occurrence. Subject to this limit for any one person, the total limit of **our** liability shown for each occurrence is for all damages, including care or loss of services, due to **bodily injury** to two or more persons in any one occurrence.

(Emphasis in original.)

Nationwide paid the Moyas $50,000 in UM benefits (representing a stacking of the $25,000 "each person" limit), $10,000 for the seat belt death benefit, and $10,000 for the death and dismemberment benefit.

The Moyas brought this action,[2] alleging Nationwide breached its contract and seeking a declaration as to the appropriate interpretation of the policy. The Moyas alleged that under Nationwide's UM provision, they were entitled to the "each occurrence" limit, not the "each person" limit. The Moyas also alleged that the seat belt death benefit and the death and dismemberment benefit were subject to stacking.

Upon the parties' motion, the district court granted each party partial summary judgment. The district court found that, as a matter of law, Nationwide's policy "[was] ambiguous, and, therefore, the [Moyas] must prevail" as to the applicable UM limit. The district court ruled that the death and dismemberment benefit was not subject to stacking and granted judgment to Nationwide on this issue.[3]

### DISCUSSION

This court "review[s] orders granting summary judgment *de novo.*" Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989). A party is entitled to summary judgment if there are

---

[2]The Moyas also sued Dittmer and his insurance carrier, seeking damages for Mrs. Moya's wrongful death, medical expenses, funeral expenses and loss of income. Neither Dittmer nor his insurance carrier are parties to this appeal.

[3]The district court also ruled that the seat belt death benefit was subject to stacking, but the parties do not contest this ruling on appeal.

no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. American Fed. Sav. v. County of Washoe, 106 Nev. 869, 871, 802 P.2d 1270, 1272 (1990). Where the parties do not dispute any material issues of fact, as here, the construction of an insurance policy raises solely a question of law. Hauser v. State Farm Mut. Ins. Co., 252 Cal.Rptr. 569, 570 (Ct.App. 1988).

I. *The Moyas are entitled to the "each person" UM limit.*

Nationwide argues that in order for the higher "each occurrence" limit to be applicable, the Moyas' wrongful death claims must constitute "bodily injuries" under the policy, and secondly, those "bodily injuries" must have occurred *in* the automobile accident. Assuming, arguendo, that these wrongful death claims constitute "bodily injuries," Nationwide contends that they cannot be construed as occurring *"in"* the fatal automobile accident—especially where the compensable elements of these claims, such as grief, sorrow and loss of consortium, occurred after Mrs. Moya's death.

The Moyas argue that their wrongful death claims constitute "bodily injuries" because that term is defined to include "sickness." "Bodily injury," they contend, is generally defined only to include an injury caused by external violence; thus, added significance must be attributed to the inclusion of the word "sickness." The Moyas define "sick" as meaning: (1) sickened by strong emotion (with fear; worried); and (2) depressed and longing for something (for one's home).[4] They reason that because "grief and sorrow" are compensable elements of a wrongful death claim,[5] and because such elements are within the definition of "sickness," they have suffered "bodily injuries." We disagree.

---

[4] We note that "sickness," the operative word, is defined as: ill health; a disordered, weakened, or unsound condition; a specific disease; and nausea, queasiness. Webster's Ninth New Collegiate Dictionary, 1094 (1990).

[5] NRS 41.085, Nevada's wrongful death statute, provides in part:

2. When the death of any person, whether or not a minor, is caused by the wrongful act or neglect of another, *the heirs of the decedent and the personal representatives of the decedent may each maintain an action for damages against the person who caused the death* . . . .
. . . .
4. The heirs may prove their respective damages in the action brought pursuant to subsection 2 and the court or jury *may award each person pecuniary damages for his grief or sorrow,* loss of probable support, companionship, society, comfort and consortium and damages for pain, suffering or disfigurement of the decedent.

(Emphasis added.)

The word "sickness," as referred to in the definition of "bodily injury" under Nationwide's policy, means the sickness or disease contracted by the insured injured in the accident, Skroh v. Travelers Ins. Co., 227 So.2d 328, 330 (Fla.Dist.Ct.App. 1969), not the "grief and sorrow" of a survivor. Thus, courts generally do not construe "sickness" as including the survivor's wrongful death claims. *See, e.g.,* Valdez v. Interinsurance Exch. of Auto. Club of So. Cal., 54 Cal.Rptr. 906, 908-10 (Ct.App. 1966) (in wrongful death case, survivor's claim did not fall within policy definition of "bodily injury" even though such definition included the term "sickness or disease"). Because we are unable to construe the Moyas' wrongful death claims as falling within the term "sickness," they did not suffer a "bodily injury." Therefore, the Moyas cannot prevail on this argument.

The Moyas next argue that Nationwide's policy does not require that their claims must fall within Mrs. Moya's limits. They assert that to construe their claims as falling within the "each person" limit ignores the independent nature of their wrongful death claims.

The majority of cases apply the reasoning articulated by Nationwide, namely, that damages for loss of consortium or wrongful death—resulting from "bodily injury" to one person—are subject to the "each person" limit. *See* 1 A. Widiss, *Uninsured and Underinsured Motorists Insurance* § 12.4 (1985); *see also,* Izzo v. Colonial Penn Ins. Co., 524 A.2d 641, 645 (Conn. 1987). For example, in *Hauser,* 252 Cal.Rptr. at 570, the wife of an insured injured in a car accident sued for loss of consortium, claiming that she was entitled to the limit for "each accident," instead of "each person." The court disagreed, concluding that she could recover the "each accident" limit only if "her injury does *not* result from the bodily injury suffered by her husband." *Id.* at 571. The court stated:

> The policy's "each accident" provision amplifies State Farm's intent only to compensate multiple victims injured *in* an accident under the higher limits. That provision states: "Under 'Each Accident' is the total amount of coverage for all damages due to bodily injury to two or more persons *in the same accident.*" This definition of "each accident" implicitly distinguishes between a person harmed *in* the accident, and one harmed only as a result of injuries sustained by one *in* the accident. Since the wife was not *in* the accident, but only harmed as a result of injuries sustained *in* the accident by her husband, the policy limits her recovery for damages to that applicable to "each person."

*Id.* at 571, n.1 (emphasis in original); *accord* United Services Auto. Ass'n v. Warner, 135 Cal.Rptr. 34, 37 (Ct.App. 1976); Thompson v. Grange Ins. Ass'n, 660 P.2d 307, 317 (Wash. Ct.App. 1983). This reasoning comports with common sense because the deprived spouse would not have a claim but for the injuries sustained by his spouse. *Warner,* 135 Cal.Rptr. at 37. Furthermore, this rule complies with the traditional interpretation of "per person" and "per occurrence":

> [T]he term "one person" repeatedly has been construed to refer to the person injured directly and the words "each occurrence" to include the injuries of several persons, regardless of how many persons may suffer loss. The limitation applies to all damages sustained by all persons as a result of bodily injury to one person. This construction does not render the "per occurrence" limit a nullity because that provision applies to situations where more than "one person" suffers "bodily injury" in a single "occurrence."

*Izzo,* 524 A.2d at 644 (citations omitted).[6]

This rule that claimants must be injured "in," and not as a result of, the accident to recover the "per occurrence" limit has been applied to wrongful death claims with equal force. In *Valdez,* the heirs argued that they each enjoyed their own cause of action under California's statutory wrongful death action and that consequently they were entitled to recover under the higher "each occurrence" limit. *Valdez,* 54 Cal.Rptr. at 910. The court rejected the argument, concluding that the "each person" limit applies where only one person loses his or her life, even though several persons may have sustained damages as a result of the one death. *Id.* at 910-11; *see also* Green v. Mid-America Preferred Ins. Co., 751 P.2d 581, 584 (Ariz.Ct.App. 1987); Campbell v. Farmers Ins. Co. of Arizona, 745 P.2d 160, 165 (Ariz.Ct.App. 1987); Mackoul v. Fidelity & Cas. Co., 402 So.2d 1259, 1260 (Fla.Dist.Ct.App. 1981).[7]

---

[6]The Moyas attempt to discredit some of the cases following the majority view on the ground that they involve automobile liability insurance instead of UM coverage. We reject this argument, for there is no "reasoned basis for differentiating between liability and uninsured provisions when considering the per person and per occurrence issue." Reid v. State Farm Mut. Auto. Ins. Co., 784 F.2d 577, 579 (5th Cir. 1986). In fact, the Moyas have relied on a liability insurance case to support their position.

[7]Several courts have held the "per occurrence" limit is applicable for loss of consortium or wrongful death claims. *See* Abellon v. Hartford Ins. Co., 212 Cal.Rptr. 852 (Ct.App. 1985); Allstate Ins. Co. v. Handegard, 688 P.2d 1387 (Or.Ct.App. 1984); Giardino v. Fierke, 513 N.E.2d 1168 (Ill.Ct.App. 1987). However, the language in these policies is materially different from Nationwide's policy.

In *Abellon,* the policy did not include "loss of services" in the "each

We agree with the majority view, that is, where one person is injured in the accident, the each person limit applies, regardless of the number of persons damaged as a result of the accident. We conclude that the "each person" limit applies to the Moyas' claims. The Moyas did not suffer bodily injuries *in* the accident; their claims arose *as a result* of the injuries Mrs. Moya suffered *in* the accident (which eventually caused her death). The policy limited Nationwide's liability to the "each person" limit if only one person sustained bodily injuries *in* the accident but raised Nationwide's limitation to the "each occurrence" when two or more persons suffered bodily injuries *in* the accident. Because only Mrs. Moya suffered "bodily injuries" *in* the accident, the district court erred in concluding that the "each occurrence" limit was applicable. We therefore reverse the grant of summary judgment in favor of the Moyas on this issue.

## II. *The death and dismemberment benefit was not subject to stacking.*

The Moyas argue that they are entitled to stack the death and dismemberment benefit because there is no anti-stacking language contained within this provision.[8] They rely on State Farm Mut. Auto. Ins. Co. v. Knauss, 105 Nev. 407, 775 P.2d 707 (1989), wherein this court held that medical payment coverage provided in three policies stacked because the anti-stacking limitations were neither clear nor prominently displayed. They also rely on NRS 687B.145(1) which applies to provisions in policies of casualty insurance[9] and provides that any limiting provision of benefits pursuant to this section must be in "clear language and be prominently displayed in the policy, binder or endorsement."

---

person" definition of "all damages." Thus, the policy did not define "one person's injury" as including injuries and damages to others resulting from this bodily injury. Here, however, Nationwide's policy limited "one person's injuries" as including "loss of services, claimed to anyone for **bodily injury** to one person as a result of one occurrence."

In both *Handegard* and *Giardino,* the policies defined "bodily injury" such that it included claims for loss of consortium. *Handegard,* 688 P.2d at 1390; *Giardino,* 513 N.E.2d at 1172-73. As discussed earlier, Nationwide's policy does not define "bodily injury" as including the Moyas' wrongful death claims.

[8]We surmise that the Moyas are initially premising this argument on the fact that Nationwide insured both the vehicle involved in the fatal accident and a pickup truck.

[9]They reason that this is a casualty insurance policy, as defined in NRS 681A.020(1)(b), which provides that casualty insurance includes "liability insurance . . . provisions of medical, hospital, surgical, disability benefits to injured persons and funeral and death benefits to dependents."

The purpose of stacking is to ensure that the insured receives the benefits for which he has paid. Allstate Ins. Co. v. Maglish, 94 Nev. 699, 702, 586 P.2d 313, 314-15 (1978). Nevada case law permits two types of stacking: the aggregation of coverage limits of each car insured under a single automobile policy or the aggregation of coverage under more than one auto policy. For example, in Cooke v. Safeco Ins. Co., 94 Nev. 745, 747, 587 P.2d 1324, 1325 (1978), this court allowed the insured to stack no-fault benefits under a single policy which covered two vehicles because the insured "paid two premiums for two separate no-fault coverage." Likewise, where the insured had two separate policies which were issued by different insurers but which covered the same vehicle, no-fault benefits were considered stackable. Travelers Ins. Co. v. Lopez, 93 Nev. 463, 466-67, 567 P.2d 471, 473 (1977).

In accord, an anti-stacking clause is only necessary pursuant to NRS 687B.145(1) if the insured has coverage available to him under more than one policy or provision of coverage.[10] The Moyas paid a $2.40 premium for a $10,000 death and dismemberment benefit, and that coverage was not tied to any particular vehicle. The premiums are based on a flat rate which is adjusted depending on the coverage chosen. This coverage constituted one contractual agreement, whereby Nationwide agreed to pay a $10,000 benefit in exchange for a $2.40 premium. We therefore conclude that this benefit is not subject to stacking.

## CONCLUSION

The district court erred in ruling, as a matter of law, that the "each occurrence" UM coverage limit applied to the Moyas' wrongful death claims. Therefore, we reverse the entry of summary judgment in favor of the Moyas on this issue. The district

---

[10]NRS 687B.145(1) provides:

Any policy of insurance or endorsement providing coverage under the provisions of NRS 690B.020 or other policy of casualty insurance may provide that *if the insured has coverage available to him under more than one policy or provision of coverage,* any recovery or benefits may equal but not exceed the higher of the applicable limits of the respective coverages, and the recovery or benefits must be prorated between the applicable coverages in the proportion that their respective limits bear to the aggregate of their limits. Any provision which limits benefits pursuant to this section must be in clear language and be prominently displayed in the policy, binder or endorsement. Any limiting provision is void if the named insured has purchased separate coverage on the same risk and has paid a premium calculated for full reimbursement under that coverage.

(Emphasis added.)

court properly concluded that the death and dismemberment benefit was not subject to stacking, and we affirm the entry of summary judgment in favor of Nationwide on this issue.