Allstate Insurance Company ("Allstate") sued for a declaratory judgment, requesting that the Baldwin County Circuit Court determine the amount of insurance coverage available to Enoch Tate on a loss-of-consortium claim. The claim arose out of a motor vehicle accident involving a vehicle driven by Enoch Tate's wife, Angela Tate, and a vehicle driven by Allstate's insured, Myrtis Franklin. The trial court entered a judgment declaring that Enoch Tate's loss-of-consortium claim arose out of Angela Tate's bodily injuries and thus was not a separate claim. This holding meant that Allstate's policy limitation of $100,000 per person applied to both Angela Tate's claims and Enoch Tate's claim taken together. The Tates appeal. We reverse. We hold that Enoch Tate's claimed loss of consortium would be a separate "injury" within the language of the Allstate policy; therefore, his consortium claim has its own $100,000 limit.
On August 22, 1994, Angela Tate; two of her children, Terry and Paula; and her god child, Monica Collins, were involved in an automobile accident with Mrs. Franklin. Mrs. Franklin's vehicle ran a stop sign and collided with Angela Tate's vehicle, which was then struck by a truck driven by Dennis E. Middleton. Angela Tate sustained severe injuries to an arm and has since incurred approximately $72,527.55 in medical expenses.[1] On February 1, 1995, Mrs. Tate sued Mrs. Franklin, based on Mrs. Tate's injuries arising out of the August 1994 accident. Enoch Tate joined as a plaintiff, claiming damages for loss of consortium of his wife and, as father and next friend of Terry and Paula, seeking damages on their behalf for injuries they sustained as a result of the alleged negligence and wantonness of Mrs. Franklin. Rose M. Collins, as mother and next friend of Monica Collins, filed an action against Mrs. Franklin seeking damages for the injuries Monica sustained in the accident. The Tates amended their complaint on April 25, 1995, to add the third driver involved in the accident, Dennis Middleton, as a defendant.
At the time of the accident, Mrs. Franklin was covered by an insurance policy issued by Allstate. Allstate has undertaken to defend Mrs. Franklin. Mrs. Franklin's policy provided coverage of up to "$100,000 each person — $300,000 each occurrence"; however, the policy explicitly limits Allstate's liability by stating:
 "The limits [$100,000 per person, $300,000 per occurrence] are the maximum we will pay for any single auto accident. The limit stated for each person for bodily injury applies to all damages arising from bodily injury, sickness, disease, or death sustained by one person in any one occurrence. The occurrence limit is our total limit of liability for all legal damages for bodily injuries sustained by two or more persons in any one occurrence."
(Emphasis added.) Moreover, the policy states under the heading "Part I, Automobile *Page 824 
Liability Insurance, Bodily Injury — Coverage AA, Property Damage — Coverage BB":
 "Allstate will pay for all damages a person insured is legally obligated to pay — because of bodily injury or property damage meaning:
 "(1) bodily injury, sickness, disease or death to any person, including loss of services; and
 "(2) damage to or destruction of property, including loss of use."
(First emphasis original; all other emphasis added.)
Allstate offered the Tates $100,000 — the maximum available to them under Allstate's interpretation of the policy limits — to settle all their claims. The Tates refused the offer, asserting that Angela Tate was entitled to the $100,000 per person limit herself and that Enoch Tate's claims for loss of consortium should not be subject to Angela Tate's per person limit of $100,000. On January 26, 1996, Allstate sued for a judgment declaring its obligations under the policy. The Baldwin County Circuit Court determined that Enoch Tate's claims were subject to Angela Tate's per-person liability limit because Enoch Tate's claims were derivative of Mrs. Tate's bodily injury claims.
The Tates contend that Mr. Tate's claim for loss of consortium is not included within Mrs. Tate's personal limitation. The Tates assert that by defining "bodily injury" to include loss of services, Allstate conferred upon Mr. Tate his own bodily injury arising out of the August 1994 accident, even though he was not in the automobile at the time of the accident. The Tates claim that because, according to the policy language, Mr. Tate suffered his own bodily injury, he should not be subject to Mrs. Tate's bodily injury limit. Instead, they claim that he should have his own $100,000 limitation, provided, however, that the claims of all persons claiming under the liability coverage do not exceed the $300,000 limitation. Allstate concedes that Mr. Tate's claim for loss of consortium is covered by the policy; however, it argues that his claim must be applied against the $100,000 per-person policy limit applicable to Mrs. Tate.
It is a generally accepted principle that if there is no ambiguity in an insurance policy, a court is bound to enforce the policy as written and cannot ignore express provisions of the contract. St. Paul Mercury Ins. Co. v. Chilton-ShelbyMental Health Center, 595 So.2d 1375 (Ala. 1992). A policy is not made ambiguous by the fact that the parties interpret the policy differently. Watkins v. United States Fidelity Guar.Co., 656 So.2d 337 (Ala. 1994). The Allstate policy under which the Tates attempt to recover clearly and unequivocally defines "bodily injury" to include "loss of services." It defines "bodily injury" as including:
 "(1) bodily injury, sickness, disease or death to any person, including loss of services. . . ."
(Emphasis added.) Therefore, the Allstate policy is not ambiguous.
However, even if the policy were ambiguous, our rules of contract construction would preclude Allstate from denying coverage. "[A]mbiguities in an insurance contract are to be resolved in favor of the insured and . . . exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured." Amerisure Ins.Companies v. Allstate Ins. Co., 582 So.2d 1100, 1102
(Ala. 1991). While language in an insurance policy should be construed in accordance with its ordinary meaning, WesternWorld Ins. Co. v. City of Tuscumbia, 612 So.2d 1159 (Ala. 1992), where a policy specifically assigns to a term or phrase a meaning that goes against what is customary, the Court must not rewrite the policy so as to include or exclude coverage that was not intended. Upton v. Mississippi Valley Title Ins. Co.,469 So.2d 548 (Ala. 1985). Therefore, we must conclude that Mr. Tate's claimed loss of consortium is a "bodily injury," as that term is defined in this Allstate insurance policy.
In the absence of clear policy language answering the question, courts in other states appear to disagree on whether a loss of consortium is a bodily injury. However, in the only cases involving policy language identical to that in this policy and involving the same type of claim (a loss-of-consortium claim by a person not involved in the accident), *Page 825 
courts of other states have reached the same conclusion we reach today — that the policy definition of "bodily injury" includes loss of consortium. Valliere v. Allstate Ins. Co.,324 Md. 139, 596 A.2d 636 (1991); Allstate Ins. Co. v. Handegard,70 Or. App. 262, 688 P.2d 1387 (1984). The Valliere court held that under an identical Allstate insurance policy, the loss of consortium claim was a "bodily injury" subject to its own $100,000 limit. That court based its interpretation on the policy definition of "bodily injury":
 "It is settled that in construing insurance contracts, words are to be given their customary and normal meaning, unless there is evidence that the parties intended to employ the language in a special sense. When a policy defines a term in a manner which differs from the ordinary understanding of that term, the policy definition controls. . . . In the insurance policy involved in the present case . . . the term 'bodily injury' is specifically defined to include 'loss of services'. The insurer is bound by that definition."
324 Md. at 142, 596 A.2d at 638 (citations omitted). See also,Handegard, 70 Or. App. at 265-67, 688 P.2d at 1389.
Allstate asserts that Weekley v. State Farm Mut. Auto. Ins.Co., 537 So.2d 477 (Ala. 1989), not Valliere, should control our decision. In Weekley, this Court concluded:
 "[N]o further recovery may be had [by the spouse not involved in the accident] based upon a consortium claim, because that claim arises out of the bodily injury to the injured spouse, and not out of a separate bodily injury to [the spouse asserting the loss of consortium claim]. A consortium claim does not constitute a claim for bodily injury.
 ". . . [T]he limits of liability for each person, arising out of the 'bodily injury' to one person, include claims for loss of consortium."
537 So.2d at 480. However, unlike Valliere and Handegard,Weekley did not set out the language of the contract at issue and did not state whether the policy specifically included "loss of services" within the definition of "bodily injury." Because of the factual similarities between this case andValliere and Handegard, we find those cases more persuasive and instructive on this issue than Weekley. We note also that Allstate, because it was the defendant in both Valliere andHandegard, was on notice that other courts might construe this policy language contrary to the interpretation for which Allstate now argues. If Allstate, after getting that notice, had revised its policy language to make it clearly state what Allstate now says the policy means, then perhaps this Court would not have to be deciding this case.
After considering the policy language and considering the decisions in Valliere and Handegard, we hold that where, as in this case, an insurance policy specifically defines "bodily injury" to include "loss of services," a party asserting a claim for loss of consortium has suffered a "bodily injury," within the meaning of the policy language, even if that person has sustained no other bodily injuries. Therefore, Mr. Tate, is not subject to the per-person policy limitation applicable to Mrs. Tate, but is limited only by his own per-person limitation and by the per-occurrence limitation. We reverse the judgment and remand this case for proceedings or an order consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, SHORES, HOUSTON, KENNEDY, COOK, BUTTS, and SEE, JJ., concur.
[1] Angela Tate's medical expenses have been paid by Blue Cross and Blue Shield, which is now asserting its subrogation rights against Allstate or, in the alternative, is seeking reimbursement.