FILED
United States Court of Appeals
Tenth Circuit

July 8, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

USAA CASUALTY INSURANCE
COMPANY,

      Plaintiff Counter Defendant -
Appellant,

v.

BETHANY CALDERON,
individually and as personal
representative of the estate of
Sebastian Calderon, deceased,

      Defendant Counter Plaintiff -
Appellee,

and

TIMOTHY WADE,

      Defendant - Appellee.

No. 19-2115
(D.C. No. 1:18-CV-00588-SCY-KK)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **McHUGH**, and **EID**, Circuit Judges.
_____

---

[*]    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

This appeal concerns a disagreement over the policy limits of an insurance policy. The disagreement arose from an accident involving a car and motorcycle. The motorcyclist (Mr. Sebastian Calderon) died, and his widow (Ms. Bethany Calderon) sued for her late husband's wrongful death and her own loss of consortium.

The driver of the car (Mr. Timothy Wade) had an insurance policy limiting liability coverage for each person's "bodily injury," which was defined to include emotional distress. This definition encompassed Ms. Calderon's alleged loss of consortium, so we conclude that her claim for loss of consortium triggered a separate policy limit.

**1.    The overarching issue involves interpretation of the policy limits for Mr. Wade's liability insurance policy.**

USAA provided liability insurance to Mr. Wade with a policy limit of $100,000 for each person's bodily injury. The parties agree that Mr. Calderon suffered a bodily injury, but disagree over whether Ms. Calderon suffered a distinct bodily injury. If she did, Mr. Wade's liability insurance would provide separate policy limits for the bodily injuries of Mr. and Ms. Calderon. If Ms. Calderon didn't suffer a bodily injury, her claim wouldn't have triggered a separate policy limit.

**2.     The district court grants summary judgment to Ms. Calderon, concluding that her loss of consortium triggered a separate policy limit.**

Both parties moved for summary judgment, and the district court granted Ms. Calderon's motion. As a threshold issue, the court declined to decide whether the policy was ambiguous. The court instead ruled that even if the policy language had been ambiguous, the court would need to liberally construe the policy in favor of coverage.

**3.     We conduct de novo review, applying New Mexico's substantive law.**

We engage in de novo review, applying the same summary-judgment standard that applied in district court. *Wilson v. Titan Indem. Co.*, 508 F.3d 971, 973 (10th Cir. 2007). When deciding summary-judgment motions, the court ordinarily views the evidence in the light most favorable to the non-movant. *Red Panther Chem. Co. v. Ins. Co. of Pa.*, 43 F.3d 514, 517 (10th Cir. 1994). Here, however, the material facts are undisputed.

We must interpret the insurance policy and apply this interpretation to the undisputed facts. To interpret the policy, we apply New Mexico law. *See Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1277 (10th Cir. 2011) (applying the forum state's substantive law in a diversity case). Under New Mexico law, interpretation of an insurance policy constitutes a matter of law. *United Nuclear Corp. v. Allstate Ins. Co.*, 285 P.3d 644, 647 (N.M. 2012).

3

**4.     The insurance policy contains three pertinent and unambiguous clauses.**

The insurance policy provides:

> For BI [Bodily Injury] sustained by one person in any one auto accident, our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for BI Liability. Subject to this limitation for "each person," the limit of liability shown on the Declarations for "each accident" for BI Liability is our maximum limit of liability for all damages for BI resulting from any one auto accident. The limit of liability shown on the Declarations for "each accident" for PD [Property Damage] liability is our maximum limit of liability for all damages to all property resulting from any one auto accident.

Appellant's App'x at 50 (emphases deleted).

From this policy language, the parties focus on three clauses:

1.     "For BI sustained by any one person in any one auto accident,"

2.     "our maximum limit of liability for all resulting damages," and

3.     "including, but not limited to, all direct, derivative or consequential damages recoverable by any persons . . . ."

*Id.* We call the three clauses "the BI/one person clause," "the primary clause," and "the damages clause."

4



To discern the meaning of the insurance policy, we must consider how the three clauses interrelate.

The parties' disagreement about the insurance policy stems from their interpretations of the BI/one person clause and the damages clause. The meaning becomes unambiguous, however, when we consider what these clauses modify.

To determine what these clauses modify, we apply the "'nearest reasonable referent' canon." *See Travelers Indemn. Co. v. Mitchell*, 925 F.3d 236, 243 (5th Cir. 2019) (applying this canon to interpret an insurance policy). Under this canon, the court presumes that a modifier refers to the nearest reasonable referent. Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 152 (2012). This presumption stems from the sensible inference that modifiers ordinarily refer to the nearest reasonable referents. *See Grecian Magnesite Mining, Indus. & Shipping*

5

*Co. v. Commissioner*, 926 F.3d 819, 824 (D.C. Cir. 2019) (stating that "the point" of the nearest-reasonable-referent canon is that "ordinarily, and within reason, modifiers and qualifying phrases attach to the terms that are nearest"); *see also Moore v. Osser*, 233 A.2d 579, 581–82 (Pa. 1967) (interpreting a provision based on the "postulate of good sentence structure to locate a modifying clause as close to its antecedent as possible").

The nearest-reasonable-referent canon yields insight into the interrelationship between the BI/one person and damages clauses. These clauses adjoin separate parts of the primary clause ("our maximum limit of liability for all resulting damages"). This clause's subject ("our maximum limit of liability") is modified by the adjoining BI/one person clause. The damages clause modifies its adjoining phrase: "all resulting damages."



Together, the three clauses unambiguously provide that

- the policy limit applies to bodily injury sustained by one person in an auto accident,

6

- the policy limit covers all resulting damages, and

- all resulting damages include consequential damages.[1]

**5. Ms. Calderon suffered a distinct bodily injury consisting of her loss of consortium.**

With this understanding of how the three clauses interrelate, we consider whether Ms. Calderon suffered a distinct bodily injury, triggering a policy limit separate from her husband's. We answer "yes."

To determine whether the per-person limit applies separately to Ms. Calderon's claim for loss of consortium, we consider the policy's definition of "bodily injury." This definition includes both "bodily harm" and "death." Appellant's App'x at 48. So Mr. Calderon's bodily harm and death constitute a discrete bodily injury, triggering a $100,000 policy limit. But did Ms. Calderon's loss of consortium entail another distinct "bodily injury"?

The policy says not only what "bodily injury" is but also what it's not. Bodily injury generally "does not include mental injuries such as emotional distress, mental anguish, humiliation, mental distress, or any similar injury . . . ." *Id.* This general proposition is qualified: ". . . unless

---

[1] Consequential damages are damages that flow indirectly from the wrongful act. *Primetime Hospitality, Inc. v. Albuquerque*, 206 P.3d 112, 120 (N.M. 2009). So when one spouse is injured, the other spouse "may also suffer consequential injuries by reason of liability for hospital and doctor bills or for loss of services or consortium." *Gonzales v. Allstate Ins. Co.*, 921 P.2d 944, 948 (N.M. 1996) (quoting 8A John A. Appleman, Insurance Law and Practice § 4893, at 60 (1981)).

7

it [the emotional distress, mental anguish, humiliation, mental distress, or similar injury] arises out of physical injury to some person." *Id.*

We must apply this definition to Ms. Calderon's alleged loss of consortium. Her loss arose out of physical injury to "some person" (Mr. Calderon), so her loss constitutes a distinct "bodily injury." Mr. and Ms. Calderon thus suffered discrete bodily injuries, each triggering a separate policy limit of $100,000.

USAA disagrees, focusing on the damages clause, which refers to "direct, derivative or consequential damages recoverable by any persons." USAA homes in on the prepositional phrase "by any persons." Of course, Ms. Calderon was "any person." So, USAA argues, this clause must sweep in Ms. Calderon's consequential damages, such as her loss of consortium. The upshot, according to USAA, is that the policy limit for Mr. Calderon's bodily injury included his wife's loss of consortium.

USAA also contends that Ms. Calderon's filings in district court had disregarded this argument. We disagree. Ms. Calderon spent little space on this argument, but only because it related just tangentially to her reading of the policy. In her view, the entire paragraph is framed as a policy limit for each person sustaining bodily injury. Given this reading of the paragraph, Ms. Calderon argues that the phrase "all . . . consequential damages" refers simply to an example of the damages falling within the policy limit for each person suffering a bodily injury.

8

We agree with Ms. Calderon's reading of the policy. USAA's focus on the damages clause overlooks the structure of the clause and the sentence as a whole. The entire clause states that the damages "includ[e], but [are] not limited to, all direct, derivative or consequential damages recoverable by any persons." *Id.* at 50.

The clause ends with the prepositional phrase "by any persons." But that prepositional phrase lies within a larger prepositional phrase beginning with "including." The larger prepositional phrase serves only to modify the direct object in the primary clause ("resulting damages"). So Ms. Calderon's emotional distress could constitute part of the "resulting damages." But whose damages and for what injury? The BI/one person clause tells us: damages "[f]or BI [Bodily Injury] sustained by one person in any one auto accident." *Id.*



Because Ms. Calderon's loss of consortium constituted a distinct bodily injury, the term "all resulting damages" relates to her bodily injury

9

rather than her husband's. So her "resulting damages" include her loss of consortium. The policy does not say or suggest that Ms. Calderon's loss of consortium is part of her husband's damages.

**6.     The three clauses do not conflict.**

USAA argues that the district court erroneously treated the three clauses as internally conflicting, leading to an erroneous characterization of the policy as ambiguous. We disagree with USAA's interpretation of the district court's ruling. The court did not say that the clauses were inconsistent or that the policy was ambiguous. The court said only that it would need to liberally construe any possible conflict in the language to favor coverage.

We agree with USAA that the clauses do not conflict. They instead complement one another, explaining that each person is limited to his or her own "resulting damages" for bodily injury, including all of that person's consequential damages. It is impossible to interpret the policy as doing anything else.

This interpretation of the policy does not create an ambiguity or permit double recovery.

10

USAA contends that this interpretation creates an absurdity or double recovery by allowing both Mr. and Ms. Calderon to recover for Ms. Calderon's emotional distress. We respectfully disagree.[2]

The policy does not suggest that either Mr. or Ms. Calderon can recover for the other's damages. Mr. Calderon's estate can recover for his bodily injury (consisting of his wrongful death), and Ms. Calderon can recover for her bodily injury (consisting of her loss of consortium). Allowing two parties to recover for their own injuries is neither an absurdity nor fodder for double recovery.

**7.    The case law does not cast doubt on this interpretation of the policy.**

USAA also contends that Ms. Calderon's interpretation conflicts with the case law. As USAA argues, some cases interpret policy limits to cover loss of consortium as a consequence of wrongful death, subjecting both claims to the same policy limit. *See, e.g.*, *Gonzales v. Allstate Ins. Co.*, 921 P.2d 944, 950 (N.M. 1996). But in those cases the courts are interpreting different policy language.

The importance of the policy language underlies the four opinions cited by USAA: *Gonzales v. Allstate Ins. Co.*, 921 P.2d 944 (N.M. 1996);

---

[2]    Ms. Calderon argues that USAA failed to preserve these arguments. For the sake of argument, we may assume that USAA preserved these arguments. Even if the arguments were preserved, they would fail on the merits.

11

*Ill. Farmers Ins. Co. v. Marchwiany*, 856 N.E.2d 439 (Ill. 2006); *Prudential Prop. & Cas. Ins. Co. v. McCullen*, CIV. A. 90-4145, 1990 WL 149096 (E.D. Pa. Oct. 4, 1990) (unpublished); and *State Farm Mut. Auto. Ins. Co. v. Klinefelter*, No. 8:17-CV-770-T-30MAP, 2017 WL 4226697 (M.D. Fla. Sept. 22, 2017) (unpublished).

In two of these cases, the policies' definitions of bodily injury didn't encompass mental distress. In *Gonzales*, for example, the policy defined "bodily injury" as "bodily injury . . . including damages sustained by anyone else as a result of that bodily injury." 921 P.2d at 947. The Supreme Court of New Mexico held that the language was "substantially the same" as that in a New Mexico statute mandating insurance coverage only for "bodily injury, sickness or disease, including death." *Id.* at 949 (quoting N.M. Stat. Ann. § 66-5-301(A) (1978)). Similarly, the policy in *Marchwiany* defined "[b]odily [i]njury" as "[i]njury to the body, sickness, disease or death of any person." 856 N.E.2d at 442. The third case, *McCullen*, never even mentioned a potential argument for multiple bodily injuries; the plaintiff was requesting recovery for both injury and loss of consortium arising out of the same bodily injury. *See* 1990 WL 149096, *passim.* And in the fourth case, *Klinefelter*, the parties did not dispute the existence of fewer bodily injuries than necessary to trigger a higher policy limit. 2017 WL 4226697, at *3.

12

Courts have sometimes interpreted liability insurance policies' per-person limits with definitions of "bodily injury" to include both physical and emotional harm. *E.g.*, *State Farm Mut. Automobile Ins. Co v. Jakupko*, 881 N.E.2d 654, 658 (Ind. 2008); *Tate v. Allstate Ins. Co.*, 692 So. 2d 822, 825 (Ala. 1997); *Allstate Ins. Co. v. Handegard*, 688 P.2d 1387, 1390 (Or. Ct. App. 1984). In these cases, the courts have interpreted the policy limits to apply separately to one injured person's physical harm and another person's emotional distress. *See*, *e.g.*, *Jakupko*, 881 N.E.2d at 656, 662 (holding that when the policy defined "bodily injury" to include "sickness," the per-person limit for covered bodily injury applied separately to the claims for emotional distress suffered by the wife and children of someone injured in a car wreck); *Tate*, 692 So. 2d at 825 ("[W]e hold that where, as in this case, an insurance policy specifically defines 'bodily injury' to include 'loss of services,' a party asserting a claim for loss of consortium has suffered a 'bodily injury,' within the meaning of the policy language, even if that person has sustained no other bodily injuries."); *Handegard*, 688 P.2d at 1390 ("We hold that when, as here, 'loss of services' is defined as a bodily injury, wife suffers physical injury and husband claims loss of wife's services, *two* people have suffered 'bodily injury' in one occurrence and recovery is not limited to the $50,000 limit for *one* person." (emphasis in original)).

13

We agree with these opinions. The policy limits are triggered by some person's "bodily injury," which is defined to include both physical and emotional harm arising out of some person's physical injury.

Ms. Calderon's harm was emotional, but it arose out of Mr. Calderon's physical injury. So Mr. and Ms. Calderon suffered distinct "bodily injuries," as defined in the policy, triggering separate policy limits of $100,000. Given the applicability of separate policy limits for Mr. and Ms. Calderon's bodily injuries, we affirm the award of summary judgment to Ms. Calderon.

Entered for the Court


Robert E. Bacharach
Circuit Judge