921 P.2d 944

Pauline A. GONZALES,
Plaintiff–Appellant,

v.

ALLSTATE INSURANCE COMPANY,
Defendant–Appellee.

No. 23066.

Supreme Court of New Mexico.

July 24, 1996.

Rehearing Denied July 24, 1996.

138

John R. Polk, Albuquerque, for Appellant.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Lisa Mann Burke, Jon T. Neumann, Albuquerque, for Appellee.

## OPINION

MINZNER, Justice.

On motion of Appellant Pauline Gonzales for rehearing and whatever further relief this Court deems just and proper, the opinion filed April 22, 1996 is withdrawn, and the following opinion is substituted in its place. The motion is otherwise denied.

Appellant Pauline Gonzales appeals the trial court's order granting summary judgment in favor of Appellee Allstate Insurance Co. Gonzales sought compensation for the wrongful death of her husband, who was killed when he was struck by an automobile. This appeal raises a single issue about the interpretation of specific provisions of an automobile insurance policy. We are asked to decide whether Gonzales's claim for loss of consortium is subsumed by the compensation paid for her husband's injury, or whether it is considered a separate additional sum. We conclude that, under the language of this specific policy, the claim for loss of consortium is subsumed under the compensation for the "bodily injury" suffered by Gonzales's husband because it is encompassed by the phrase, "damages sustained by anyone else as a result of that bodily injury." Additionally, we hold that under the language of the policy loss of consortium does not constitute a bodily injury to Gonzales that would entitle her to receive additional separate compensation. Finally, we hold that, thus construed, the policy does not contravene public policy as presently embodied in our uninsured motorists' insurance statute, NMSA 1978, Section 66–5–301(A) (Repl.Pamp.1994). Therefore, we affirm.

## FACTS

Gonzales and her husband, Benito, were the named insureds under an automobile insurance policy issued to them by Allstate. On June 18, 1994, Benito was killed while he was a pedestrian when he was struck by a vehicle driven by Jared Nash. Nash was insured by a GEICO insurance policy, under which Benito's estate received the policy limits as compensation for his wrongful death. Because the policy limits of the GEICO policy were exhausted, Gonzales turned to her own uninsured/underinsured coverage to pay the balance of the damages for her husband's wrongful death claim and also for her own loss of consortium.

Under the Allstate policy, Gonzales contracted for uninsured/underinsured motorist coverage for damages of up to $25,000 for each person to a maximum of $50,000 for each accident. Specifically, the policy's "Limits of Liability" provision provided:

Regardless of the number of insured autos under this coverage, the specific amount shown in the declarations is the maximum that we will pay under this coverage for:

1. "each person" for damages arising out of bodily injury in any one motor vehicle accident, including damages sustained by anyone else as a result of that bodily injury.

2. "each accident" for damages arising out of bodily injury to two or more persons in any one motor vehicle accident. This "each accident" limit is subject to the "each person" limit.

Allstate paid the full "each person" underinsured motorist coverage policy limits of $25,000 to Gonzales as personal representative of her husband's wrongful death claim. However, Allstate refused to provide further remuneration for her consortium claim under

the "each accident" liability limit, alleging that the language in the policy precludes such recovery.

Gonzales then sought a declaratory judgment in district court to resolve the issue. Allstate moved for a judgment on the pleadings, and Gonzales moved for summary judgment. (Because the court referred to matters outside the pleadings, these motions were treated as cross-motions for summary judgment.) After a hearing, the trial court denied Gonzales's motion and granted judgment in favor of Allstate. Specifically, the court determined that loss of consortium did not constitute bodily injury as contemplated by the insurance policy and relevant statutes. This appeal followed.

## DISCUSSION

■ In reviewing a grant of summary judgment, we must determine whether the moving party has demonstrated that there is no genuine issue of material fact and is therefore entitled to judgment as a matter of law. *Roth v. Thompson,* 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). Since there are no genuine issues of material fact in this case, and only the conclusion of law is challenged, our task is to determine whether the district court correctly applied the law to the facts. *Amica Mut. Ins. Co. v. Maloney,* 120 N.M. 523, 527, 903 P.2d 834, 838 (1995).

The issue on appeal is whether Gonzales's claim for loss of consortium entitles her to a $25,000 maximum under the "each person" limitation, or a $50,000 maximum under the "each accident" limitation. In other words, is loss of consortium the result of the bodily injury sustained by her husband so as to make the "each person" limit applicable; or is loss of consortium a second claim for bodily injury, in addition to the injury sustained by her husband, that would invoke the "each accident" limit?

The vast majority of courts that have addressed the issue presented by this appeal have held that the "each person" limitation applies. The reasons given, however, are not always uniform, and have depended on the specific policy language in question and the requirements in the applicable statutes. We therefore must examine this question in light of the insurance policy provisions now before us and in light of our applicable statutes. We emphasize the policy provisions; in order to ascertain the risks Allstate and its policyholder assumed when Allstate issued its policy, our cases say the language in the particular insurance policy is critical. *See New Mexico Physicians Mut. Liab. Co. v. LaMure,* 116 N.M. 92, 95, 860 P.2d 734, 737 (1993) (discussing standards of review for interpreting policy language); *Sanchez v. Herrera,* 109 N.M. 155, 159, 783 P.2d 465, 469 (1989) (containing comparable discussion).

Gonzales argues that her claim falls within paragraph 2 for three reasons: (1) loss of consortium is a separate and independent action belonging to the spouse, and therefore merits recovery under the "each accident" limitation; (2) loss of consortium constitutes a separate compensable "emotional bodily injury"; and (3) restricting loss of consortium claims to the "each person" limitation is contrary to the policy embodied in our uninsured motorists' insurance statute. We examine each argument in turn, although we note that the terms of the "each person" limitation appear to control the answer to both the first and second arguments Gonzales raises on appeal.

*A. Loss of consortium as an independent cause of action belonging to the spouse*

■ Gonzales argues that because we have recognized loss of consortium as a separate cause of action belonging to the spouse, *Romero v. Byers,* 117 N.M. 422, 426, 872 P.2d 840, 844 (1994), such a claim is not a derivative claim but rather, as a matter of law, is a separate injury to a second person within the meaning of the "each accident" limitation. In addressing Gonzales's first contention, we consider whether the independent nature of a loss of consortium claim necessarily implicates the higher "each accident" policy limits. We conclude it does not.

In order to determine coverage, we initially look to the language of the policy itself. *See LaMure,* 116 N.M. at 95, 860 P.2d at 737 ("We interpret unambiguous insurance con-

140

tracts in their usual and ordinary sense unless the language of the policy requires something different."). The "each person" limitation provides compensation for "bodily injury ... including damages sustained by anyone else as a result of that bodily injury," without regard to whether the damages recoverable were comprehended within one, or several, judgments or causes of action. The "each accident" limitation provides greater coverage for damages arising out of bodily injury to two or more persons in any one accident, but incorporates by reference the "each person" limitation. Under the terms of the policy, separate causes of action do not necessarily invoke the "each person" limit. The limits of liability under the policy are neither affected by nor contingent upon the number of causes of action that might accrue from one person's bodily injury. Rather, the relevant contingency is the number of people who suffered bodily injury.

Thus, if only one person suffered bodily injury, then the "each person" limitation applies; if two or more people suffer bodily injury, then the "each accident" limitation applies. Gonzales's claim that the independent nature of a loss of consortium claim necessarily triggers a separate "each person" liability is without support in the policy. Although Gonzales has an independent claim for loss of consortium, we conclude that recovery under the Allstate policy is restricted to the "each person" limit of liability unless she also suffered bodily injury within the meaning of the "each accident" limitation, including its incorporation by reference of the "each person" limitation.

### B. Loss of consortium as bodily injury

■ We next consider Gonzales's contention that loss of consortium is a form of "bodily injury." Gonzales argues that by removing the physical injury requirement for negligent infliction of emotional distress, our case law has developed to the point that we should recognize loss of consortium as injury to a second person, which triggers the "each accident" limitation. Gonzales urges us to equate loss of consortium with the bodily injury required by the "each accident" limitation, because we have allowed recovery for

emotional distress without bodily injury. *See Folz v. State,* 110 N.M. 457, 470–71, 797 P.2d 246, 259–60 (1990). She suggests that having expanded tort liability to that extent in *Folz,* we would be deciding this case on an inconsistent rationale.

Gonzales notes that if her claim is encompassed within the insurance policy coverage for her husband's death, as a practical matter, there are competing demands on a very limited sum of money. She suggests we should not construe the policy to support that result. With this argument, Gonzales asks us to look at public policy. We will address public policy, but first we conclude that, as defined in this insurance policy, emotional distress suffered by a person as the result of loss of consortium does not fall within the category of "bodily injury" to that person.

■ An insurance claim arises from the policy language. *Cf. LaMure,* 116 N.M. at 95, 860 P.2d at 737 (stating that if certain physician misconduct is not covered by a malpractice policy, then the insurer is not required to indemnify the physician). Here Gonzales contracted for coverage of bodily injury, which is defined in the policy as "bodily injury, sickness, disease or death." Without doubt, loss of consortium, without any physical manifestation, is an emotional injury. *See Romero,* 117 N.M. at 425, 872 P.2d at 843 (defining loss of consortium as emotional distress suffered by a spouse who loses the normal company of his or her injured mate). By its plain meaning, "bodily injury" constitutes injury to the physical body rather than mental and emotional injuries. We detect no ambiguity in the language used in the policy, and other courts in evaluating the meaning of "bodily injury" have reached the same conclusion. *See, e.g., Lepic ex rel. Lepic v. Iowa Mut. Ins. Co.,* 402 N.W.2d 758, 762–63 (Iowa 1987) (citing several authorities stating "that loss of consortium is not a separate bodily injury for purposes of the policy liability limit"); *Gillchrest v. Brown,* 532 A.2d 692, 693 (Me.1987) (the term "bodily injury" is unambiguous when interpreted according to plain and commonly accepted meaning). When language contained in a policy is unambiguous, we will not strain the words to encompass meanings they do not

clearly express. *See Allstate Ins. Co. v. Gonzalez-Loya,* 226 Ill.App.3d 446, 168 Ill.Dec. 482, 485, 589 N.E.2d 882, 885 (Ill.App.Ct. 1992) ("If the words of an insurance policy can reasonably be given their plain, ordinary, and popular meaning, the provisions should be applied as written, and the parties should be bound to the agreement into which they entered. This court cannot strain or torture the language of an insurance policy to create an ambiguity." (citation omitted)); *West Trucking Line, Inc. v. Northland Ins. Co.,* 459 N.W.2d 262, 263 (Iowa 1990) (ambiguity does not exist merely because the parties disagree as to the meaning of a particular term); *Watts v. Aetna Casualty & Surety Co.,* 574 So.2d 364, 369 (La.Ct.App.) ("[C]ourts should not strain to find an ambiguity where none exists."), *cert. denied,* 568 So.2d 1089 (1990); *City of Fort Pierre v. United Fire & Casualty Co.,* 463 N.W.2d 845, 848 (S.D.1990) (court may not seek out a strained or unusual meaning for the benefit of the insured).

Gonzales cites to *Abellon v. Hartford Insurance Co.,* 167 Cal.App.3d 21, 212 Cal.Rptr. 852, 855 (1985), for the proposition that bodily injury includes loss of consortium. However, the policy at issue in *Abellon* was materially different. In that case, the comparable "each person" limitation covered "all damages resulting from bodily injury to any one person caused by any one accident." *Id.* 212 Cal.Rptr. at 853. The comparable "each accident" limitation covered "all damages resulting from bodily injury caused by any one accident." *Id.* The *Abellon* court concluded that loss of consortium was covered by the "each accident" limitation. *Id.* at 855. In this case, however, the "each person" limitation specifically and expressly applies. Gonzales's claim for consortium falls within the phrase "damages sustained by anyone else as a result of that bodily injury." Thus, the "each person" limitation in this case preempts (or controls the scope of) the "each accident" limitation. As is apparent, *Abellon* may be distinguished because it interprets an insurance policy containing substantially different language. In fact, application of *Abellon* has been limited by subsequent opinions of the California Court of Appeal based on different insurance policy language. *See,*

*e.g., United Servs. Auto. Ass'n v. Lilly,* 217 Cal.App.3d 1396, 266 Cal.Rptr. 691, 694 ("Unlike the contract at issue here, the *Abellon* contract did not require that the bodily injury subject to the 'each person' limitation be suffered by a person *in* the accident."), *review denied* (May 2, 1990); *Hauser v. State Farm Mut. Auto. Ins. Co.,* 205 Cal.App.3d 843, 252 Cal.Rptr. 569, 572 (1988) ("The differences between the contractual provisions in *Abellon* and those here ... are readily apparent. The provisions here expressly define 'one person's bodily injury' to include 'all injury and damages *to others* resulting from this bodily injury.' ... No such limitation appears in the contract in *Abellon.*" (emphasis in original)).

Our view is in accord with a majority of jurisdictions that have confronted this issue. *See, e.g., Weekley v. State Farm Mut. Auto. Ins. Co.,* 537 So.2d 477, 480 (Ala.1989); *Lampton v. United Servs. Auto. Ass'n,* 835 P.2d 532, 534 (Colo.Ct.App.1992), *cert. denied* (Sept. 14, 1992); *Creamer v. State Farm Mut. Auto. Ins. Co.,* 161 Ill.App.3d 223, 112 Ill.Dec. 748, 750, 514 N.E.2d 214, 216 (1987); *Lepic,* 402 N.W.2d at 763–64; *New Hampshire Ins. Co. v. Bisson,* 122 N.H. 747, 449 A.2d 1226, 1227 (1982); *McGovern v. Williams,* 741 S.W.2d 373, 374 (Tex.1987); *Federal Kemper Ins. Co. v. Karlet,* 189 W.Va. 79, 428 S.E.2d 60, 62–64 (1993); *Richie ex rel. McManus v. American Family Mut. Ins. Co.,* 140 Wis.2d 51, 409 N.W.2d 146, 148 *review denied,* 140 Wis.2d 873, 416 N.W.2d 66 (1987). As discussed in 8A John A. Appleman, *Insurance Law and Practice* § 4893, at 60 (1981):

[I]t often happens that there are consequential damages, as well as the damages suffered by the injured person himself. Thus, where a wife or child is injured, the husband or parent may also suffer consequential injuries by reason of liability for hospital and doctor bills or for *loss of services or consortium.* But it has been held that these different types of injuries cannot be split up, in order to bring the claim within the higher policy limits; they are regarded as essentially injuries to one person, so that the lower policy limits ap-

plicable to injuries sustained by any one person would govern. (Emphasis added.)

### C. Mandatory financial responsibility and uninsured motorist coverage in New Mexico

■ We also consider whether denial of Gonzales's claim would contravene public policy in New Mexico. Our uninsured motorists' insurance statute, Section 66–5–301(A), mandates uninsured motorist coverage whenever the insured is "legally entitled to recover damages." Because New Mexico recently recognized loss of consortium in *Romero*, Gonzales asserts that it would contravene public policy for Allstate to deny liability.

■ We look to the terms of the insurance statutes to determine what is required, and then to the terms of the insurance policy to discern whether it complies with the mandatory law. It is the public policy in this State that every owner of a motor vehicle must procure an insurance policy providing coverage of at least the limits set forth in NMSA 1978, Section 66–5–215 (Repl. Pamp.1994) (requiring such minimum coverage as $25,000 for bodily injury or death of one person). If the policy falls short of the statutory requirements, the policy nevertheless will be considered to provide the minimum statutory requirements. *See Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 218, 704 P.2d 1092, 1094 (1985) (statutory requirements will be read into an automobile insurance policy if the policy does not address uninsured motorist coverage).

Allstate's policy contains substantially the same language as that contained in our statute. Section 66–5–301(A) mandates insurance coverage for "bodily injury, sickness or disease, including death." Allstate's policy meets the requirements of Section 66–5–301 as it covers "bodily injury . . . including damages sustained by anyone else as a result of that bodily injury." We conclude that Allstate's policy terms comply with state law.

Section 66–5–301(A) mandates that uninsured motorist policies will be issued "according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance."

Pursuant to that authority, the Superintendent of Insurance in 1967 promulgated Department of Insurance Regulation 67–2, also known as Article 24, Chapter 64, Rule I (filed December 1, 1967), which prescribes a form for uninsured motorist policies. Condition 6 of Regulation 67–2 includes the following provision:

> The company's limit of bodily injury liability for *all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person in any one accident* shall not exceed the amount specified by the financial responsibility law of New Mexico for bodily injury to one person in any one accident.

(Emphasis added.) Application of this provision to the instant appeal favors Allstate's position since it is beyond dispute that Gonzales's damages (which are for the loss of Benito's services) arose out of the bodily injuries sustained by her husband. Moreover, the presence of this provision in the regulation indicates that the Superintendent of Insurance has interpreted Section 66–5–301 in a manner consistent with Allstate's position in this litigation, which is that Allstate's total combined liability for Benito's bodily injuries and Gonzales's loss of consortium injuries will not exceed the $25,000 per-person limit.

■ This Court has frequently said that "the statutory interpretations of the agency charged with administration of the statute are persuasive" and will be given deference by the courts. *New Mexico Pharmaceutical Ass'n v. State*, 106 N.M. 73, 75, 738 P.2d 1318, 1320 (1987); *see also Morningstar Water Users Ass'n v. New Mexico Public Utility Comm'n*, 120 N.M. 579, 583, 904 P.2d 28, 32 (1995); *Regents of Univ. of N.M. v. Hughes*, 114 N.M. 304, 312, 838 P.2d 458, 466 (1992). This rule of law is, of course, subject to the condition that the agency's interpretation be a reasonable one. *See Morningstar*, 120 N.M. at 583, 904 P.2d at 32.

The view of Section 66–5–301 that the Superintendent appears to have taken is a reasonable one. Thus, Department of Insurance Regulation 67–2 supports a conclusion that the particular policy terms at issue do not

conflict with public policy, as expressed in Section 66–5–301.

Allstate's policy does not preclude a claim for loss of consortium; however, its liability is limited to "each person" because under the terms of the policy, loss of consortium is covered as consequential damages arising from injury to another. That policy complies with the statute as it has been interpreted by the Superintendent of Insurance. Because the insurance policy at issue complies with the statute, as reasonably interpreted by the Superintendent, we conclude that Allstate's denial of the application of the higher limitation does not contravene public policy. Although different statutory language might produce a different result, we believe the existing statute expresses a public policy with which the insurance policy is consistent.

### D. Different policy language may produce a different outcome

Finally, Gonzales cites to a case from another jurisdiction for the proposition that loss of consortium claims may be treated separately from claims for bodily injury to one person, thus allowing the claimant to recover under the higher "each accident" limit. *See Allstate Ins. Co. v. Handegard*, 70 Or.App. 262, 688 P.2d 1387 (1984), *review denied*, 298 Or. 704, 695 P.2d 1371 (1985). In *Handegard*, the court based its decision on the language contained in the specific policy at issue, which included loss of services in the definition of "bodily injury." Accordingly, the court held that in an accident where only the wife sustained physical injury, and her husband suffered the loss of her services, two people suffered "bodily injury" in one occurrence under the language of the policy. *Id.* 688 P.2d at 1390. We recognize that different policy language may produce a different outcome; thus, we resolve the issue before us solely on Gonzales' policy and our state statutes. Therefore, cases such as *Handegard* are not relevant.

### CONCLUSION

When the "each person" limit of liability in a policy provides coverage for all "damages arising out of bodily injury [to one person], including damages sustained by anyone else

as a result of that bodily injury," both the claim of the bodily injured person and the claim for loss of consortium are covered. Recovery for both claims may not exceed the fixed amount of damages under the "each person" limit of liability. Because Allstate paid its maximum limit of damages of $25,000 under the "each person" limit of liability, it fulfilled its obligation under the insurance contract. We affirm the judgment of the trial court.

**IT IS SO ORDERED.**

BACA and FRANCHINI, JJ., concur.