2004-NMCA-076

92 P.3d 1280

**ECONOMY PREFERRED INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Quanxi JIA, as Parent and Legal Guardian of Richard Jia, a minor, Defendant–Appellant.**

**No. 23,587.**

Court of Appeals of New Mexico.

May 4, 2004.

H. Brook Laskey, Jennifer L. Stone, Miller, Stratvert, P.A., Albuquerque, for Appellee.

Brian K. Branch, Law Offices of Brian K. Branch, James A. Branch, Jr., Albuquerque, for Appellant.

*OPINION*

FRY, J.

{1}  This case requires us to consider the meaning of "bodily harm, sickness or disease" in the context of a policy of automobile liability insurance, and as applied to the emotional distress suffered by a witness to an accident.  Defendant Quanxi Jia (Jia), as parent and legal guardian of Richard Jia (Richard), appeals a declaratory judgment regarding the uninsured and underinsured motorists (UM) benefits of a policy issued by Plaintiff Economy Preferred Insurance Company (EPIC).  The coverage dispute stems from an accident in which Xuming Wu, Jia's wife and Richard's mother, was struck and killed by a drunk driver.  Richard, then five years old, witnessed the fatal accident.  Jia argues that, under the policy's UM provisions, Richard is entitled to assert a separate claim for damages for emotional distress suffered as a result of witnessing the accident.  In addition, Jia argues that Richard's emotional distress is accompanied by physical manifestations.  EPIC contends that the policy language excludes coverage for emotional injuries, and that Richard's injuries are purely emotional or psychological in nature.  For the reasons that follow, we agree with the trial court that the UM coverage does not extend to Richard's injuries, and we affirm.

**BACKGROUND**

{2}  In June 2001, a drunk driver hit several pedestrians who were out for an evening walk on a residential street in Los Alamos.  The car struck Richard's mother, a family friend, and the friend's infant child, who was being pushed in a stroller.  Richard was also with the group, riding his bicycle in front of his mother at the time of the accident.  He was not struck by the vehicle.  On appeal the parties dispute whether Richard saw the moment of impact, but there is no disagreement that he was present and witnessed his mother's injuries.  She died from the injuries several hours later.

{3}  Jia turned to the family's UM coverage for compensation.  At the time of the accident, the family had two policies of insurance with EPIC.  Combined, the policies provided UM coverage of $200,000 in damages arising out of bodily injury to each person, and $600,000 in damages for bodily injury resulting from each accident.  The Estate of Xuming Wu (the Estate) sought $200,000 in compensatory damages for wrongful death, and on Richard's behalf Jia sought an additional $200,000 for negligent infliction of emotional distress (NIED).  Pursuant to a court-approved stipulated settlement, EPIC paid $200,000 to the Estate in wrongful death benefits, but it did not pay additional compensation to Richard, arguing that Richard's injuries were not within the definition of bodily injury and that his claims were therefore subsumed by the per person limit of $200,000.

{4}  EPIC sought a declaratory judgment, asking the trial court to rule that the policies provide no UM coverage for emotional distress, and that Richard's claims were subsumed under the $200,000 limit for damages arising out of his mother's death.  Jia timely answered and also moved for partial summary judgment on the grounds that the term "bodily injury" was ambiguous as a matter of law, and that the terms "sickness and disease" within the definition of bodily injury created a reasonable expectation on the part of an insured that emotional injuries

such as Richard's would be covered separately from his mother's injuries. Consequently, Jia argued, an additional $200,000 in UM coverage remained available to Richard as compensation for NIED. Jia further argued to the trial court that Richard exhibited physical manifestations of emotional distress. In a cross-motion for summary judgment, EPIC contended that, as a matter of law, the insurance policies provided no coverage for emotional distress claims such as Richard's. The trial court granted summary judgment in favor of EPIC, ruling that the UM provisions do not cover emotional distress. Jia appeals.

## DISCUSSION

{5} The parties agree there are no genuine issues of material fact in this case. Therefore, we review whether the trial court properly applied the law to the undisputed facts. *Wiard v. State Farm Mut. Auto. Ins. Co.*, 2002–NMCA–073, ¶ 6, 132 N.M. 470, 50 P.3d 565.

{6} "An insurance claim arises from the policy language." *Gonzales v. Allstate Ins. Co.*, 122 N.M. 137, 140, 921 P.2d 944, 947 (1996). Accordingly, to determine the extent of UM coverage, we look to the specific language of the UM provisions in the EPIC policy. *Id.* at 139, 921 P.2d at 946; *Wiard*, 2002–NMCA–073, ¶ 7, 132 N.M. 470, 50 P.3d 565.

{7} The UM coverage provides as follows:

A. We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** sustained by an **insured** and caused by an auto accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

. . .

B. **Insured** as used in this Part means:
1. you or any **family member**.
2. **any person occupying your covered auto.**
3. **any person** for damages that person is entitled to recover because of **bodily inju-**ry to which this coverage applies sustained by a person described in 1. or 2. above.

Under subpart (A), compensatory damages payable to "an insured" may be owed because of injury to "an insured." This can be read as referring to two different insureds, which suggests that Richard could recover compensatory damages because of injury to his mother. It also appears that Richard falls under the definition of "any person" in subpart (B)(3), which further indicates that Richard might be able to recover damages he sustained as a result of injury to his mother. The policy's "Limit of Liability," however, explicitly constrains Richard's potential recovery by the following terms:

The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** to any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident. This is the most we will pay regardless of the number of **insureds**, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the auto accident.

This language unambiguously limits the coverage based on "bodily injury." Under this language, if the only bodily injury was that of Richard's mother, then the "each person" limit is the maximum that can be recovered. However, if Richard also sustained bodily injury, then the "each accident" limit provides the maximum. This leads to the dispositive issue: the meaning of bodily injury, which the policy explicitly defines as "bodily harm, sickness or disease, including death that results."

{8} Under New Mexico law, this definition of bodily injury unambiguously excludes emotional injury. The insurance policy in *Gonzales* contained comparable language defining bodily injury as "bodily injury, sickness, disease or death." 122 N.M. at 140,

921 P.2d at 947. Considering that language, our Supreme Court held that "[b]y its plain meaning, 'bodily injury' constitutes injury to the physical body rather than mental and emotional injuries." *Id.; see also Wiard,* 2002-NMCA-073, ¶ 9, 132 N.M. 470, 50 P.3d 565 ("Without specific policy language to the contrary, bodily injury does not include emotional injuries such as loss of consortium."). The language at issue here is substantially similar, and we are not persuaded by Jia's arguments that in this case the policy language is somehow ambiguous with respect to what kind of injury is covered. *See Gonzales,* 122 N.M. at 140–41, 921 P.2d at 947–48 ("When language contained in a policy is unambiguous, we will not strain the words to encompass meanings they do not clearly express."). The policy permits no additional recovery for the harm suffered by Richard unless his injury is physical in nature.

{9} Our analysis does not end here because, although the parties agree that Richard was not struck by the drunk driver, Jia alleges that Richard exhibits physical manifestations of his emotional distress. *Gonzales* left open the possibility that where an emotional injury is accompanied by physical manifestation, the injury might constitute bodily injury. 122 N.M. at 140, 921 P.2d at 947 ("[L]oss of consortium, *without any physical manifestation,* is an emotional injury" (emphasis added)). In addition, as Jia points out, numerous other jurisdictions have held that certain kinds of physical manifestations accompanying emotional injury constitute bodily injury. *See, e.g., State Farm Fire & Cas. Co. v. Westchester Inv. Co.,* 721 F.Supp. 1165, 1167 (C.D.Cal.1989) (finding that dry throat, rise in body temperature, and knot in stomach are sufficient physical manifestations of emotional distress to constitute bodily injury); *W. Cas. & Sur. Co. v. Waisanen,* 653 F.Supp. 825, 832 (D.S.D.1987) (in a dispute about an insurers' duty to defend, finding that allegation of high blood pressure is sufficient to bring injury within definition of bodily injury); *Voorhees v. Preferred Mut. Ins. Co.,* 128 N.J. 165, 607 A.2d 1255, 1261–62 (1992) (concluding that bodily injury encompasses emotional distress accompanied by physical manifestations such as headaches, stomach pains, nausea, depres-

sion, and body pain); *Trinh v. Allstate Ins. Co.,* 109 Wash.App. 927, 37 P.3d 1259, 1264 (2002) (holding that bodily injury includes emotional distress where it is accompanied by physical symptoms such as weight loss, sleep loss, headaches, stomach pains, and muscle aches). However, much of the case law relied upon by Jia is inapplicable because it addresses the question of whether a plaintiff's physical injuries are evidence of an emotional injury for the purpose of proving a claim for NIED or its equivalent. *See, e.g., Whalley v. Sakura,* 804 F.2d 580, 587 (10th Cir.1986) (considering fatigue, decreased mobility, and sleep disturbances in determination of whether the plaintiff stated a claim for NIED under New Mexico law); *Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759, 762, 765 (1983) (indicating that such symptoms as nightmares and fear of being alone may be considered as evidence of seriousness of emotional injuries). Here we are addressing the different question of whether a party sustained a bodily injury. In this case, Richard's symptoms, as distressing as they are, cannot be construed as bodily injury.

{10} Based on two affidavits submitted by Jia below, Richard's symptoms that might be construed as physical include hysterical crying, uncontrollable shaking and various sleep difficulties such as crying uncontrollably in his sleep, insomnia, and nightmares. This situation is distinguishable from those with allegations that emotional distress resulted in physical pain, *see, e.g., Voorhees,* 607 A.2d at 1262, or an easily measurable condition such as high blood pressure. *See, e.g., Waisanen,* 653 F.Supp. at 832; *see also State Farm,* 721 F.Supp. at 1167; *McGuire v. Am. States Ins. Co.,* 491 So.2d 606, 608 (Fla.Dist.Ct.App.1986) (holding that bodily injury includes mental distress accompanied by headaches and muscle spasms). Within jurisdictions that maintain a distinction between bodily and emotional injury in the context of interpreting insurance policies, we are aware of no cases in which symptoms such as Richard's, without more, have been construed as sufficient to render an emotional injury physical. Yet at least one case holds that, although physical manifestations of emotional distress may constitute bodily

injury, sleeplessness is not a sufficient physical manifestation to do so. *SL Indust., Inc. v. Am. Motorists Ins. Co.*, 128 N.J. 188, 607 A.2d 1266, 1273 (1992) (designating sleeplessness as an emotional condition). We do not resolve what would be sufficient to constitute bodily injury; we simply hold that crying, shaking, and sleep difficulties are not enough.

{11} As our tort law recognizes, it is not an easy task to separate emotional injuries, physical injuries, and their respective causes. *See Folz v. State*, 110 N.M. 457, 470–71, 797 P.2d 246, 259–60 (1990). Nevertheless, to interpret the terms of the policy, we must differentiate between bodily injury and emotional injury; the alternative would be to extend coverage for bodily harm to all emotional injury, a result that is inconsistent both with precedent and with common-sense notions of what a reasonable insured would understand from the policy language.

{12} Jia contends that we must reach a different result from *Gonzales* because that case involved loss of consortium, and this case involves NIED. We recognize that one of the holdings of *Gonzales* was that loss of consortium is essentially derivative of the injury of another, 122 N.M. at 139–40, 921 P.2d at 946–47, and we agree with Jia that NIED can be characterized as an independent injury, not a derivative injury. However, the crucial question here is whether the UM coverage for "bodily harm, sickness or disease" covers Richard's injuries. *See id.* at 140, 921 P.2d at 947 (looking to the terms of the policy to determine that "separate causes of action do not necessarily invoke the 'each person' limit"); *Wiard,* 2002–NMCA–073, ¶ 8, 132 N.M. 470, 50 P.3d 565 ("[T]hat Wiard has a separate cause of action, however, does not address the viability of such a claim against his own UIM coverage."). Richard's ability to state a claim for NIED does not determine the meaning of bodily injury within the terms of the policy. Because the terms of the UM provisions dictate this outcome, the result holds true regardless of the nature of Jia's cause of action under principles of tort law. *See N.M. Physicians Mut. Liab. Co. v. LaMure,* 116 N.M. 92, 99, 860 P.2d 734, 741 (1993) ("Be-

cause the insurer's obligations emanate from LaMure's insurance contract, independent definitions of malpractice do not control the disposition of the coverage issue before us." (citation omitted)); *Nollen v. Reynolds,* 1998–NMCA–108, ¶ 9, 125 N.M. 387, 962 P.2d 633 (holding that UM policy limits for loss of consortium are controlled by the policy terms and not by whether New Mexico tort law permits a separate claim for damages); *see also Moore v. Continental Cas. Co.,* 252 Conn. 405, 746 A.2d 1252, 1257 (2000) (holding that a policy definition of bodily injury excluded emotional distress regardless of the fact that Connecticut law permits a tort claim for emotional distress without an accompanying physical injury); *Daley v. Allstate Ins. Co.,* 135 Wash.2d 777, 958 P.2d 990, 993 (1998) (rejecting the argument that recovery against an underinsured driver is defined by whether the claimant has an action in tort law).

## CONCLUSION

{13} For the foregoing reasons, we affirm.

{14} **IT IS SO ORDERED.**

ALARID and CASTILLO, JJ., concur.