2008-NMCA-132

193 P.3d 565

**F. Michael HART, as Guardian ad Litem and Next Friend of Minor A.E., Plaintiff–Appellee,**

v.

**STATE FARM MUTUAL Automobile INSURANCE COMPANY, Defendant–Appellant.**

**No. 27,633.**

Court of Appeals of New Mexico.

June 26, 2008.

Certiorari Denied, No. 31,243, Aug. 13, 2008.

Maureen A. Sanders, Sanders & West-brook, P.C., Albuquerque, NM, Kyle W. Gesswein, Las Cruces, NM, for Appellee.

Ruth Fuess, Miller, Stratvert P.A., Albuquerque, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} The question presented in this case is whether Child suffered "bodily injury" as defined in policies of uninsured motorist (UM) insurance issued to Child's parents, after she was subjected to inappropriate sexual touching in an uninsured motor vehicle. We conclude that under the undisputed facts, Child's injuries did not constitute "bodily injury" as defined by the policies. We therefore reverse the summary judgment entered in Child's favor.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} Child was sexually molested on multiple occasions by Neighbor. The abuse took place in several locations, including Neighbor's home and Child's home. Neighbor also molested her in his vehicle on a day trip to Cloudcroft, New Mexico. "[D]uring the trip[, Neighbor] squeezed [Child's] chest through her clothes, put a hand on her leg, rubbed his hand up and down her leg and on the way back started touching her again, touched her chest and squeezed her leg through her clothing."

{3} In this proceeding, it is uncontested that Neighbor's car is uninsured. Three automobile policies obtained by Child's parents from Defendant (State Farm) provide uninsured motorist coverage to an insured who suffers bodily injury caused by an accident arising out of the ownership, maintenance, or use of an uninsured motor vehicle and who is entitled to collect from the owner or driver of that vehicle. On Child's behalf as guardian ad litem and next friend, Plaintiff sought a declaratory judgment that the injuries Child sustained as a result of the sexual touching by Neighbor in his vehicle are covered by the uninsured motorist provisions of her parents' policies. These provisions are identical and state:

> We will pay damages for *bodily injury* ... an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be sustained by an *insured* and the *bodily injury* ... must be caused by accident arising out of the ownership, maintenance or use of an *uninsured motor vehicle*.

The policies define "bodily injury" as "bodily injury to a *person* and sickness, disease or death which results from it."

{4} The parties entered into a stipulation for purposes of bringing dispositive motions before the district court. The parties agreed that the evidence to be used for the dispositive motions would be "limited to the documents and statements previously exchanged by the parties." The parties also stipulated that

> [t]he injuries suffered by [Child] as a result of inappropriate sexual touching for which Plaintiff makes a claim for coverage under the uninsured motorist policy of [Child's parents] did not include any physical injury such as bruises, scrapes, or cuts. Plaintiff's claim for 'bodily injury' under the UM coverage is based upon the claim of inappropriate touching and squeezing and the physical, cognitive or emotional manifestations of the effects of the sexual touching.

{5} The physical, cognitive, and emotional manifestations resulting from Neighbor's inappropriate sexual touching upon Child included sleep disruption, cognitive confusion, and an inability to concentrate as described in therapist's notes and a doctor's report, which set forth physical manifestations of

Child's underlying psychological and emotional damages. Specifically, Child had trouble sleeping and experienced recurring dreams involving disturbing sexual encounters. Further, Child experienced emotional distress, had continued feelings of anxiety, experienced increased agitation and irritability, became very anxious and fearful, suffered lowered self-esteem, and developed problems with peers. Finally, Child became unable to concentrate and amotivational. She began experiencing cognitive confusion, difficulty in organizing thoughts and in staying on task, and difficulty in doing her school work. According to her family, the most noticeable changes in Child were her lower grades, her lower quality of work as a student, and her peer relationships. Further, Child began to associate with more "defiant" and "oppositional" individuals and became more concerned with social acceptance. Child also became more angry, cautious, guarded, and anxious.

{6} Both parties filed motions for summary judgment, and the district court granted summary judgment in Plaintiff's favor after orally ruling that Child's physical manifestations of the sexual touching constituted "bodily injury" under the policies and that Neighbor's vehicle "was an active accessory" in causing the "bodily injury." State Farm appeals.

## DISCUSSION

{7} The only coverage questions presented in this case are: (1) whether Child suffered "bodily injury" as defined in the UM policies issued to Child's parents; and (2) whether such "bodily injury" arises out of the use of an uninsured motor vehicle. "The parties agree there are no genuine issues of material fact in this case. Therefore, we review whether the trial court properly applied the law to the undisputed facts." *Econ. Preferred Ins. Co. v. Jia*, 2004–NMCA–076, ¶ 5, 135 N.M. 706, 92 P.3d 1280. New Mexico cases addressing whether emotional injury is included in the concept of "bodily injury" compel us to conclude that Child did not suffer "bodily injury" under the terms of the UM policies issued by State Farm to Child's parents.

{8} In *Gonzales v. Allstate Insurance Co.*, 122 N.M. 137, 921 P.2d 944 (1996), our Supreme Court stated that in order to determine coverage of a UM policy, we must initially look to the language of the policy itself because, "[a]n insurance claim arises from the policy language." *Id.* at 139–40, 921 P.2d at 946–47. The policy in that case defined "bodily injury" as " 'bodily injury, sickness, disease or death,' " and the specific issue presented was whether loss of consortium was a result of "bodily injury" of the deceased spouse or whether loss of consortium was a separate claim for "bodily injury" by the surviving spouse. *Id.* at 140, 921 P.2d at 947. The distinction was critical because the UM coverage was limited for damages up to $25,000 for "each person" to a maximum of $50,000 for "each accident" and the policy defined the "each person" limitation as " 'damages arising out of bodily injury in any one motor vehicle accident, *including damages sustained by anyone else as a result of that bodily injury.*' " *Id.* at 138, 921 P.2d at 945 (emphasis added). If loss of consortium was a separate bodily injury to a second person (the surviving spouse) under the policy, then the "each accident" limitation rather than the "each person" limitation would apply. *Id.* at 139, 921 P.2d at 946. The limits of liability under the policy were neither affected by nor contingent upon the number of separate causes of action that might accrue from one person's bodily injury. *Id.* at 140, 921 P.2d at 947. "Rather, the relevant contingency is the number of people who suffered bodily injury." *Id.* Our Supreme Court concluded that by its "plain meaning," the term "bodily injury," without any ambiguity, "constitutes injury to the physical body rather than mental and emotional injuries." *Id.* In light of the policy language, our Supreme Court therefore held that the "each person" limitation, rather than the "each accident" limitation, was applicable. *Id.* at 143, 921 P.2d at 950. Nevertheless, *Gonzales* left open the possibility that an emotional injury accompanied by a physical manifestation might constitute "bodily injury." *See id.* at 140, 921 P.2d at 947 ("[L]oss of consortium, without any physical manifestation, is an emotional injury.").

{9} In *Economy Preferred, Insurance Co.,* the question left open by *Gonzales* was squarely before us. *Economy Preferred Ins. Co.,* 2004–NMCA–076, ¶ 9, 135 N.M. 706, 92 P.3d 1280. In that case a drunk driver hit several pedestrians who were out for a walk on a residential street. *Id.* ¶ 2. The child's mother was among those who were hit, and she died several hours later. *Id.* The child, who was with the group and riding his bicycle in front of his mother at the time of the collision, was not hit. *Id.* While there was a dispute about whether the child saw the moment of the impact, there was no dispute that he was present and witnessed his mother's injuries. *Id.* The child brought a claim for negligent infliction of emotional distress (NIED) under his family's UM insurance policy, which defined "bodily injury" as " 'bodily harm, sickness or disease, including death that results.' " *Id.* ¶¶ 3, 7. Following *Gonzales* and *Wiard v. State Farm Mutual Automobile Insurance Co.,* 2002–NMCA–073, ¶ 9, 132 N.M. 470, 50 P.3d 565 ("Without specific policy language to the contrary, bodily injury does not include emotional injuries such as loss of consortium."), we first held that "[u]nder New Mexico law, this definition of bodily injury unambiguously excludes emotional injury" and that the UM policy afforded no coverage for the child's emotional damages unless his injury was physical in nature. *Economy Preferred Ins. Co.,* 2004–NMCA–076, ¶ 8, 135 N.M. 706, 92 P.3d 1280. Although the child suffered symptoms, which could be construed as physical, that included hysterical crying, uncontrollable shaking, and various sleep difficulties, such as crying uncontrollably in his sleep, insomnia, and nightmares, we concluded that the child's symptoms, without more, were not sufficient to render the emotional injuries physical. *Id.* ¶ 10. In arriving at this conclusion, we specifically declined to follow or rely on case law that addresses the question of whether a plaintiff's physical injuries are evidence of an emotional injury for the purpose of proving a NIED claim, or its equivalent, because the question before us was a different one—whether the child sustained a bodily injury. *Id.* ¶ 9. We concluded by stating:

> [T]o interpret the terms of the policy, we must differentiate between bodily injury and emotional injury; the alternative would be to extend coverage for bodily harm to all emotional injury, a result that is inconsistent both with precedent and with common-sense notions of what a reasonable insured would understand from the policy language.

*Id.* ¶ 11.

{10} We conclude that *Gonzales* and *Economy Preferred Insurance Co.* require us to hold that Child did not incur "bodily injury" under her parents' UM policies as a result of the inappropriate sexual touching she endured. According to the stipulation of the parties, Child's injuries "did not include any physical injury such as bruises, scrapes, or cuts." Her claim is limited to "the physical, cognitive or emotional manifestations of the effects of the sexual touching." These injuries are not materially different from the emotional injuries of the child in *Economy Preferred Insurance Co.,* and there is nothing in the language of the policies in this case that require a different result. Child argues that she suffered an impairment of the functions of her brain—an organ of the body— and therefore has suffered a bodily injury. There is nothing in the record that supports this conclusion.

{11} In light of our conclusion, we do not address the second question presented or State Farm's assertion that it is disputed that Neighbor sexually touched child. We do however observe that State Farm stipulated (1) that the evidence to be used for the dispositive motions to be brought before the district court would be limited and would include "answers to discovery in this and related cases," and (2) that Neighbor admitted in requests for admissions that he sexually touched Child on the trip to and from Cloudcroft. While a jury could reject the admission at a trial, State Farm is bound by its stipulation in consideration of the motion for summary judgment.

**CONCLUSION**

{12} The order of the district court granting Plaintiff summary judgment is reversed, and the case is remanded with instructions to

enter summary judgment in favor of State Farm.

{13} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and CELIA FOY CASTILLO, Judges.